**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

Plaintiffs: ROOFTOP RESTORATION & EXTERIORS JV, INC., a Colorado corporation; PHILIP COUTU, an individual; SF CONSTRUCTION SERVICES, LLC, a Colorado limited liability company; and FRANK H. WALLEY, IV, an individual.

v.

FALLS LAKE FIRE & CASUALTY INSURANCE COMPANY, LANDMARK AMERICAN INSURANCE COMPANY, ASPEN SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, AND IRONSHORE SPECIALTY INSURANCE COMPANY

Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Taussig & Smith, PC and The Keith Frankl Law Firm, file this Complaint and Jury Demand by Plaintiff's against Defendants Falls Lake Fire & Casualty Insurance Company, Landmark American Insurance Company, Aspen Specialty Insurance Company, Steadfast Insurance Company, and Ironshore Specialty Insurance Company. For their claims and causes of action, Plaintiffs states and allege as follows:

**Notice of related lawsuit**

1. A related lawsuit has been filed in the District Court, County of El Paso, state of Colorado Case No. 2023CV30466 (hereafter "state lawsuit"). In that lawsuit the parties are the Mayhurst Condominium Association, Inc.("Mayhurst"), plaintiff in the state lawsuit; Defendants in the state lawsuit: ROOFTOP RESTORATION & EXTERIORS JV, INC., a Colorado corporation; PHILIP COUTU, an individual; SF CONSTRUCTION SERVICES LLC, a Colorado limited liability company; and FRANK H. WALLEY IV, an individual, (collectively "Plaintiffs" herein); and intervening parties Falls Lake Fire & Casualty Insurance Company, Landmark American Insurance Company, Aspen Specialty Insurance Company,

    Steadfast Insurance Company, and Ironshore Specialty Insurance Company (collectively "Insurers').

2. This related state lawsuit involves a dispute over the validity of an assignment of insurance claims from Mayhurst to Plaintiffs.

3. The Insurers intervened in the state lawsuit on August 15, 2023, claiming that they entered into a settlement with Mayhurst without participation of Plaintiffs on July 17, 2023.

4. Defendants in the state lawsuit claim that they entered into an assignment with Mayhurst which assigned their insurance claims against the Insurers stemming from an August 2020 hailstorm along with any claims for unreasonable delay and/or denial if Mayhurst's Insurers violated Colorado's Prompt Payment Statutes, C.R.S. § 10-3-1115 and 1116 (hereafter "Assignment").

5. Mayhurst now claims otherwise.

6. The Insurers and Mayhurst originally recognized the validity of the Assignment.

7. The Insurers and Mayhurst did not question the validity of the Assignment until at least August 2022.

8. Plaintiffs, pursuant to the Assignment, demanded appraisal on their own behalf and not on behalf of Mayhurst in November 2021.

9. This appraisal began in approximately December 2021.

10. After the claim was in appraisal for almost a year and a half, on April 26, 2023, Insurers questioned Plaintiff's' right to bring appraisal.

11. On May 30, 2023, the Insurers (and Mayhurst) took steps which caused the appraisal to stop.

12. Through declaratory judgment claims from Mayhurst and Plaintiffs, the Court in the state lawsuit has been asked to determine the validity of the Assignment between Mayhurst and Plaintiffs.

13. This lawsuit is brought against the Insurers by Plaintiffs. In general, it includes allegations of unreasonable delay and denial by unreasonably stopping the appraisal process among other claims. The claims in this lawsuit all rest upon the validity of the challenged Assignment.

14. The statute of limitations has compelled Plaintiffs to bring this lawsuit. This lawsuit should be stayed pending the outcome of a determination of the validity of the assignment in the state lawsuit.

## **Parties**

15. Phil Coutu is an individual who resides in the state of Florida and conducts business in the state of Colorado.

16. Rooftop Restoration & Exteriors JV, Inc. ("Rooftop") is a Colorado corporation with principal offices located in the state of Florida.

17. Mr. Coutu is an owner and principal of Rooftop.

18. SF Construction Services, LLC ("SF") is a Colorado limited liability company with a principal place of business located at 7433 Indian Wells Cove, Lone Tree, Colorado 80124.

19. Frank H. Walley is a resident of the state of Colorado and an owner and manager of SF.

20. Based upon representations by the Insurers' Colorado legal counsel in the state lawsuit, the Insurers are:

    a. Falls Lake Fire & Casualty Insurance Company is a company existing under the laws of the State of California with its principal place of business in Raleigh, North Carolina.

    b. Landmark American Insurance Company is a company existing under the laws of the State of Oklahoma with its principal place of business in Atlanta, Georgia.

    c. Aspen Specialty Insurance Company is a company existing under the laws of the State of North Dakota with its principal place of business located in Rocky Hill, Connecticut.

    d. Steadfast Insurance Company is a company existing under the laws of the State of Illinois with its principal place of business in Schaumburg, Illinois.

    e. Ironshore Specialty Insurance Company is a company existing under the laws of the State of Arizona with its principal place of business located in Boston, Massachusetts.

21. At the time the Assignment was executed by Mayhurst and Plaintiffs,

Rooftop had not yet been incorporated. After it was incorporated, Mayhurst ratified the assignment as proof of loss to the Insurers. This occurred on or about July 29, 2021.

After Rooftop's incorporation, it also ratified the contract entered on its behalf by Mr. Coutu.

22. Mayhurst claimed in the state lawsuit that because Rooftop was not yet incorporated at the time the Assignment was executed, that the Assignment was invalid. However, Mr. Coutu signed on behalf of Rooftop and the actions by Mr. Coutu and Rooftop were subsequently ratified by all interested parties.

**Request for stay pending determination of the state lawsuit concerning the validity of the Assignment**

23. Plaintiffs incorporate their allegations into this portion of the Complaint.

24. The state lawsuit will necessarily require a determination of whether the Assignment is valid.

25. If the Assignment is found to be valid then Plaintiffs have standing and may continue this lawsuit.

26. If the Assignment is not found to be valid then Plaintiffs would not have standing regarding their primary claims.

27. If the Assignment is not found to be valid then Plaintiffs would still probably have standing to bring claims for interference with contract and prospective business advantage, but it would likely be significantly affected by a determination that the Assignment is invalid.

GENERAL ALLEGATIONS AND JURISDICTION

28. Plaintiffs incorporate their previous and subsequent allegations into this portion of the Complaint as set forth in full herein.

29. This court has jurisdiction over the parties.

30. Pursuant to 28 U.S.C. § 1332(a), this Court has jurisdiction over all civil actions between citizens of different states, provided the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). In addition, 28 U.S.C. § 1441 provides that "any civil action brought in a State court of which the district of the United

States have original jurisdiction, may be removed by the defendant to the district court of the United States for the district and division embracing the place where such action is pending. 28 U.S.C. § 1441(a). "[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S.Ct. 547, 553 (2014) (quoting 28 U.S.C. § 1446(a)).

31. The diversity requirement of § 1332(a) is satisfied here as the parties are completely diverse. Plaintiff Rooftop Restoration is a citizen of Colorado, with its place of incorporation and principal place of business in the State of Colorado. Defendants are citizens of other states as set forth above.

32. Mayhurst was responsible for the residential real property located at 105-177 Mayhurst Avenue, Colorado Springs, Colorado 80906 (the "Property").

33. On or about August 5, 2020, a wind and hailstorm occurred in the Colorado Springs area ("storm"). As a result, Mayhurst sustained a covered loss under an insurance policy issued by the Insurers.

34. In August 2020, the parties to the state lawsuit, Mayhurst and Plaintiffs, entered into an agreement whereby the claims of Mayhurst pursuant to its contract of insurance with the Insurers was assigned to the Plaintiffs in this lawsuit, i.e. the Assignment.

35. Mayhurst caused Rooftop to submit a claim for insurance benefits as assignee of claim.

36. Mayhurst recognized the validity of the Assignment until at least August 2022.

37. In March 2023, Mayhurst filed a lawsuit challenging the validity of the Assignment.

38. Neither Mayhurst nor the Insurers stated that the appraisal should stop until May 30, 2023.

39. The Insurers recognized the validity of the Assignment from its inception until June 5, 2023.

40. The Insurers expressly rejected the validity of the Assignment on June 5, 2023.

41. The Insurers subsequently filed an interpleader action in July 2023 where

they said they were unsure of the validity of the Assignment.

42. That interpleader action is now part of the state court lawsuit referenced above.

43. The Insurers received information supporting the claim for damage to the property from the storm as a result of the efforts of Plaintiffs in this lawsuit.

44. In March 2021, the Insurers issued an initial payment of $180,524.21 by mail directed to Rooftop in Lakewood, Colorado.

45. In March 2021, the Insurers represented that they calculated the replacement cost value of the claim at $443,867.37.

46. On or about July 29, 2021, Rooftop submitted a sworn proof of loss from Mayhurst and Rooftop to the Insurers ("proof of loss").

47. The proof of loss submitted to Insurers was submitted by "Rooftop Restoration and Exteriors JV by Philip Coutu, principal" and by Mayhurst through" William Carlson, Board President."

48. This proof of loss contains numerous attachments and supporting documents.

49. The jointly submitted proof of loss expressly stated that Rooftop Restoration and Exteriors JV was the assignment of benefits holder.

50. The joint proof of loss also expressly stated that no other persons had an interest in the claim except for Rooftop Restoration and Exteriors JV.

51. The proof of loss sought payment of at least $2,024,990.58, less the deductible and appreciation.

52. Prior to the claim from the storm, Mayhurst suffered a hail loss in 2018 which cost approximately $1.4 million to bring it to pre-loss condition in 2019.

53. The damage from the 2018 hailstorm was substantially similar to the damage from the August 2020 hailstorm, i.e. the storm.

54. Notwithstanding this obvious inconsistency, the Insurers never evaluated the loss as requiring anything near $2 million to bring the Mayhurst condominiums back to their pre-loss condition. Instead, Insurers asserted that the cost to repair the same damage should go down.

55. The Insurers reviewed the proof of loss but failed to properly act upon the proof of loss. For example, the Insurers did not make additional payment or admit or deny the claim submitted within the proof of loss by Plaintiffs and Mayhurst.

56. On or about November 29, 2021, with the Insurers not timely acting on the claim, Rooftop submitted a demand for appraisal of the claim assigned pursuant to the Assignment. This demand was submitted pursuant to insurance policies issued by the defendants which provide for appraisal of damages caused by a covered loss. Such policies provide that the policyholder (or in this case it's assignee) shall select an appraiser and the insurer shall select an appraiser and the two appraisers shall select an umpire. A decision by two of the three shall be binding.

57. The Insurers recognized the assignment and agreed to appraisal.

58. Plaintiffs and the Insurers notified Mayhurst of the fact of the appraisal beginning in December 2021 and continuing onward on a repeated basis.

59. By May 2022, there was an impasse in the appraisal process. The appraiser selected by Plaintiff's could not agree upon an umpire with the appraiser selected by the Insurers.

60. Plaintiffs, through Rooftop, decided to substitute appraisers on behalf of the Plaintiffs in approximately May 2022.

61. In July 2022, the parties to appraisal were able to agree upon an umpire.

62. In July 2022 or August 2022, the umpire made it known that he needed to be paid a retainer amount.

63. From the beginning of September 2022 until approximately January 2023, the Insurers refused to pay the umpire, thereby, delaying the appraisal.

64. Beginning in September 2022, the Insurers began requesting information on the prior hail loss from 2018. The property was the same as the claim that arose in August 2020. That claim resulted in extensive repairs that were completed in 2019.

65. Beginning in September 2022 Rooftop informed the insurers that this information had already been passed on to the Insurers in 2020-2021.

66. Beginning in approximately October 2022 the Insurer's informed Rooftop

that they were seeking additional information such as canceled checks showing actual payment for the repairs completed in 2019.

67. At the time of request for proof of payment for repairs, the Insurers knew or should have known that the insurer of Mayhurst in 2019, A Travelers Insurance Company, would not have made payment without reasonable proof of completion of repairs and payment for repairs.

68. At the time of request for proof of payment for repairs, the Insurers knew or should have known that repairs had been completed because of personal inspection by representatives of the insurers in 2020 and 2021.

69. Beginning in approximately September 2022, the appraiser for the Insurers began echoing the same requests for information about completion of the prior repairs at Mayhurst in 2019.

70. As a result of these requests for proof of repairs, the appraisal process was delayed and did not seem to move forward from September 2022 through approximately March 2023.

71. In May 2022, there had been a change in Mayhurst in the management who made decisions concerning the insurance claim submitted through Plaintiffs.

72. In August 2022, Mayhurst complained that the appraisal had taken too long and sought to cancel or avoid the Assignment.

73. In August 2022, the Insurers became aware of Mayhurst's new position concerning the Assignment and coincidently began a series of actions which had the effect of delaying the appraisal process.

74. The series of actions included asking for duplicative information that was not reasonably needed such as proof of payment to the contractors who perform the work. Claiming they could not tell if repairs were completed when they had already had two or more experts go to the site to determine what work had been performed in 2019.

    In March through May 2023, the appraisal process neared completion. A final inspection was scheduled for May 31, 2023. During this final inspection, it was anticipated that the two appraisers and the umpire would meet and discuss the estimates of both appraisers.

75. On May 30, 2023, Mayhurst after communication with the Insurers informed the appraisers and umpire that the final meeting should not take

place and that there had been a settlement reached between Mayhurst and the Insurers.

76. Rooftop has been informed by their appraiser that if the inspection had occurred on May 31, 2023, it was likely that a final award would have been issued in an amount significantly larger than the amount estimated by the Insurers in March 2021.

77. Despite the fact that appraisal was expected to conclude in June 2023, it took the insurers and Mayhurst until mid-July to enter into a settlement.

78. The insurers filed documents in the state lawsuit seeking relief that included an unreasonable prohibition against Plaintiffs bringing any lawsuit for "policy benefits" among other unjustified requests for relief. Insurers had no grounds for such requests.

79. The insurers unreasonably failed to consider all reasonably available information submitted to them after receiving the proof of loss.

80. The insurers should have reviewed and acted upon this information by October 2021.

81. The insurers failed to act upon the information submitted along with the proof of loss within a reasonable time.

82. By November 2021, the Insurers had not acted upon the information submitted along with the proof of loss and required Plaintiffs to demand appraisal as a result.

83. Beginning in August 2022 and continuing from that point, the Insurers and Mayhurst acted together to prevent the appraisal process from moving forward and resulting in an award.

84. For example, in addition to other items stated in this Complaint, in 2022 the Insurers unreasonably encouraged Mayhurst to breach its contractual obligations contained within the Assignment executed in August 2020.

85. As a result of the insurer's actions and communications to Mayhurst in May 2023 the appraisal has not been allowed to continue.

86. At all times relevant hereto, The Insurers were subject to the following insurance industry standards:

    a. Insurers must proactively investigate all of its policyholder's damages in a

claim for property damage.

b. Insurers must objectively consider all evidence available to it after conducting a thorough investigation and decide claims based on policy language, and the applicable law.

c. Insurers must keep their policyholders and their assignees advised of what coverages are available for property claims.

d. Insurers must assist their policyholders and their assignees with claims under the policy.

e. Insurers must be honest with their policyholders and their assignees.

f. Insurers must equally seek information that supports increasing and decreasing the value of their insured's claim and the claim of any assignee.

g. Insurers must not conduct a biased one-sided investigation.

h. Insurers have a duty to be fair to their insureds and their assignees at all times.

i. Insurers may not deny, under-pay or refuse to pay a claim based solely on a guess or speculation.

j. Insurers cannot encourage their claim handlers to arbitrarily pay less on claims.

k. It would be wrong for insurers to encourage their claims personnel to underpay claims.

l. As part of the process of handling property damage claims, insurers may not try to settle the claim with their policyholder and/or their assignees for an unreasonably low amount.

m. It would be unreasonable for insurers to pay their policyholders or assignees something which is less than the lowest potential value of the claim.

n. Insurers must pay any amounts they have determined to be recoverable for a property claim as part of their duty to assist with the processing of the claim.

    o. Insurers should continue to evaluate and investigate all facts of a property claim even if a lawsuit is filed by the policyholder or their assignees against the insurer.

    p. Everything that happens regarding a claim should be reflected in the insurers' claim notes.

    q. Insurers must not rely on biased expert reports or a biased expert.

    r. Insurers should not in any manner tie any claim personnel's compensation with insurer profitability based on delay or denial of claims.

    s. Insurers should not use their claims department as a profit center.

    t. Insurers may not insist on conditions that are not in the insurance policy before paying claims.

    u. Insurers may not violate the Unfair Claim Settlement Practices Act.

87. As a result of Insurers' actions, Plaintiffs have sustained harms, damages and losses.

## FIRST CLAIM FOR RELIEF
### (BREACH OF A CONTRACT)

88. Plaintiffs incorporate all previous allegations as if more fully set forth herein.

89. Pursuant to the terms of the policy, Defendants contracted to provide insurance coverage to Plaintiff's assignors, Mayhurst.

90. The policy provided by Defendants to Mayhurst made Defendants responsible for (and liable to timely pay for) all reasonable and necessary mitigation and remediation of the loss arising from the covered loss arising in August 2020.

91. The insurers underpaid amounts due to Plaintiff. For example, the amount paid in March 2021 was substantially less than the amount the insurers claimed was due under a settlement agreement with Mayhurst on July 17, 2023. On July 17, 2023, the insurers agreed to pay approximately $373,000 to Mayhurst which was said to be all that was owed. In March 2021, the Insurers calculated the amount due as being $180,524.21.

92. The Insurers refused to engage in appraisal, as well as refused to participate in appraisal in good faith. Rather they attempted to delay the appraisal and eventually stop the appraisal from being completed.

93. The Insurers were faced with damage to windows that required extensive repair of elevations as well as replacement of the damaged windows. The Insurers refused to pay for storm damage with like-kind to restore the property to comparable condition by replacing the windows and performing the repairs to elevations. Additionally, the Insurers failed to investigate and pay for mitigation of moisture in the walls of the elevations at Mayhurst property.

94. The Insurers took alternating positions that were opposites. For example, the Insurers claim the Assignment was invalid. A short time later the Insurers filed an interpleader action claiming they could not tell if it was valid for not.

95. While claiming the Assignment was invalid, the insurers stopped the appraisal process.

96. As a result of these breaches of contract, Plaintiffs suffered damages.

97. Damages include but are not limited to lost profits, loss of business opportunities, and other contractual damages.

98. Plaintiffs are entitled to an order compelling defendants to complete the appraisal process.

## SECOND CLAIM FOR RELIEF
**(VIOLATION OF C.R.S. § 10-3-1115(1)(A) AND C.R.S. § 10-3-1116(1))**

99. Plaintiffs incorporate all previous allegations as if more fully set forth herein.

100. Defendants are and were, at all times relevant, persons in the business of insurance as defined by CRS 10-3-1115.

101. Plaintiffs are and were, at all times relevant, first-party insurance claimants under Colorado law who made claims for benefits.

102. Defendants unreasonably delayed and denied Plaintiffs' claims for benefits on numerous occasions.

103. Defendant's denial and delay of Plaintiffs' claim for benefits was unreasonable.

104. Pursuant to C.R.S. 10-3-1116(1), Plaintiffs are entitled to reasonable attorneys' fees, costs and two times the covered benefit.

### THIRD CLAIM FOR RELIEF
### INTERFERENCE WITH A CONTRACT

105. Plaintiffs incorporate all previous allegations as if more fully set forth herein.

106. Plaintiffs had a contract with Mayhurst in which Mayhurst assigned its rights to policies of insurance with Insurers stemming from a hail and windstorm in August 2020 along with any claims that might exist if Insurers violated Colorado's Prompt Payment Statutes, C.R.S. § 10-3-1115 and 1116, i.e. the Assignment.

107. Defendants knew or reasonably should have known of the Assignment.

108. Defendants by words or conduct, or both, intentionally interfered with the contract between Mayhurst and Plaintiffs, thereby causing Mayhurst not to perform and/or to terminate the contract with Plaintiffs.

109. Defendants' interference with the contract was improper; and

110. Defendants' interference with the contract caused Plaintiffs harm, damages and losses.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against the Defendant for actual damages in an amount which will reasonably compensate them for their damages, including compensation for:

a. Compensatory damages Plaintiffs are entitled to under the insurance policy,

    including the property damage benefits owed to Plaintiffs by Defendants; in the event Defendant has not paid them by the time this matter proceeds;

b. Compensatory damages that Plaintiff is entitled to for Defendant's breach of contract (beyond property damage benefits) and unreasonable conduct, including economic losses, emotional distress, and any unpaid contractual benefits;

c. An order compelling defendants to complete appraisal under the policy;

d. Reasonable attorney's fees, costs and two times the covered benefit (in addition to the covered benefit), pursuant to C.R.S. § 10-3-1116(1) for each unreasonable denial and delay;

e. Interest for wrongful withholding pursuant to C.R.S. 5-12-102;

f. Pre-judgment and post-judgment interest, (pursuant to Colorado law) costs, expert witness fees, and any other relief to which Paintiffs are entitled;

g. For such other and further relief as the Court deems just and proper.

Plaintiffs reserve the right to move to add exemplary damages pursuant to C.R.S. § 13-21-EXEMPLARY DAMAGES: Defendant' conduct has been willful and wanton, therefore, Plaintiffs reserve the right to amend later to add such a prayer for relief. Plaintiffs also reserve the right to amend to add any co-conspirators as defendants.

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated this 28th day of September, 2023.

                By:    /s/ *Scott D. Smith*  
                        Scott D. Smith, # 35009  
                        1873 S. Bellaire Street, Suite 400  
                        Denver, CO 80222  
                        TAUSSIG & SMITH, P.C.

                By:    /s/ *Keith Frankl*  
                        Keith Frankl  #12276  
                        1873 S. Bellaire Street, Suite 400  
                        Denver, CO 80222  
                        KIETH FRANKL LAW FIRM

**Plaintiff Rooftop Restoration & Exteriors JV, Inc Address:**
600 17th Street
Ste 2800 South
Denver CO 80202

355 S Teller St. Ste 200
Lakewood CO 80226

**Plaintiff Philip Coutu Address:**


**SF Construction Services LLC Address:**
7433 Indian Wells Cove
Lone Tree CO 80124

**Frank Walley Address:**
7433 Indian Wells Cove
Lone Tree CO 80124