## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made by and among Falls Lake Fire & Casualty Insurance Company ("Falls Lake"), Landmark American Insurance Company ("Landmark"), Aspen Insurance Company ("Aspen"), Steadfast Insurance Company ("Steadfast"), Ironshore Specialty Insurance Company ("Ironshore"), and The Mayhurst Condominium Association, Inc. ("Mayhurst"). Falls Lake may be referred to as the "Primary Insurer." Landmark, Aspen, Steadfast, and Ironshore may be referred to collectively as the "Excess Insurers," or collectively with Falls Lake, the "Insurers." Falls Lake, Landmark, Aspen, Steadfast, Ironshore, and Mayhurst may be referred to collectively as "Parties," or individually, a "Party." The Parties enter into this Agreement in consideration of the following:

### RECITALS

A.    Mayhurst was responsible for the residential real property located at 105-177 Mayhurst Avenue, Colorado Springs, CO 80906 (the "Property").

B.    Mayhurst is a member of the Commercial Industrial Building Owner's Alliance, Inc., which purchased insurance policies covering the Property. The applicable insurance policies included primary and excess layers. The Insurers are identified as follows by Insurer, policy number, and policy period:

- Primary Insurer: Falls Lake, Policy No.: CIBA-000001-01. Policy period: March 31, 2020 – March 31, 2021.

- Excess Insurer: Landmark, Policy No.: LHD912123. Policy period: March 31, 2020 – March 31, 2021.

- Excess Insurer: Aspen, Policy No.: PX007YH20. Policy period: March 31, 2020 – March 31, 2021.

- Excess Insurer: Steadfast, Policy No.: XPP-0239013-02. Policy period: March 31, 2020 – March 31, 2021.

- Excess Insurer: Ironshore, Policy No.: 1000382701-01. Policy period: March 31, 2020 – March 31, 2021.

All of the above-listed policies are referred to collectively as the "Policies" and the above-listed policy periods are referred to collectively as the "Policy Period."

C.    The Policies contained a hail deductible of $252,880.60.

D.    On or about August 5, 2020, a wind and hail storm occurred in the Colorado Springs (the "Storm"). Mayhurst submitted a claim (the "Claim") to Insurers for damage to the Property.

E.    On or about August 21, 2020, Mayhurst entered into a purported contract (the "Purported Contract") with Rooftop Restorations & Exteriors JV, Inc. ("Rooftop

# EXHIBIT D

Mayhurst0333

Restoration") and SF Construction Services, LLC ("SF," or collectively with Rooftop Restoration, "Purported Contractees") to handle the Claim with Insurers and perform construction services.

F.    By check dated March 9, 2021, Insurers sent to the Purported Contractees $180,524.81 for covered benefits under the Policies. This check was never negotiated.

G.    By email dated November 17, 2021, the Purported Contractees demanded appraisal of the amount of loss (the "Appraisal") at the Property. The Purported Contractees and the Insurers both appointed appraisers, and the appraisers appointed an umpire.

H.    By check dated April 14, 2022, Insurers sent to the Purported Contractees $93,338.86 for covered benefits under the Policies. This check was also never negotiated.

I.    On March 10, 2023, Mayhurst filed suit in case number 2023CV030466 (the "Litigation") in the El Paso County District Court (the "Court") against the Purported Contractees, Philip Coutu, and Frank H. Walley IV. Mayhurst alleged in the Litigation that the August 21, 2020 Purported Contract was not a valid or enforceable contract, among other claims. Insurers are not a party to the Litigation.

J.    There is a dispute among Mayhurst and the Purported Contractees regarding which entities are entitled to any covered benefits under the Policies, including the previously-issued but not negotiated checks referenced in Paragraphs F and H of these Recitals.

K.    The Parties wish to resolve all claims, disputes, and differences among them related to the Property, the Claim, the Policies, the Storm, the Appraisal, and the Litigation as set forth in the mutual release below. The Parties acknowledge and agree that this Agreement constitutes a compromise of disputed claims.

L.    The Parties acknowledge and agree that this settlement includes a compromise of all claims which have been made, or could have been made, by the Parties, whether known or unknown, including, without limitation, any and all claims of any Party against any other Party, related to the Property, the Claim, the Policies, the Storm, the Appraisal, and the Litigation.

NOW, THEREFORE, for and in consideration of the mutual agreement of the Parties herein, and having incorporated the Recitals set forth above, the Parties agree and covenant as follows:

## AGREEMENT

1.    Mutual Release of All Claims:  Upon execution of this Agreement by the Parties, Mayhurst and Insurers hereby fully, finally, specifically, and unequivocally release each other, including each of its past, present, and future parents, divisions, subsidiaries, partners, affiliates,

2

officers, directors, employees, agents, agencies, appraisers, umpires, adjusters, experts, attorneys, shareholders, sureties, predecessors, successors, and assignees (collectively, the "Released Parties"), from any responsibility, right, duty, or obligation of any form or nature arising out of or in any way related to the Property, the Claim, the Policies, the Storm, the Appraisal, and the Litigation. The Parties agree not to sue each other or any other Released Party or otherwise assert claims in any proceeding against each other or any other Released Party for any and all actions, causes of action, injuries, benefits, damages, extra-contractual liability, recoverable depreciation, suits, losses, claims, expenses, costs, interest, attorney fees, punitive or other damages, and demands whatsoever, in law or in equity, arising in tort, statute, contract, or otherwise, whether known or unknown, asserted or unasserted, presented or not presented, pled or unpled, paid or unpaid, that the Parties may have had, may presently have, or may in the future have, against each other or any other Released Party that have been or could have been brought arising out of or in any way related to the Property, the Claim, the Policies, the Storm, the Appraisal, or the Litigation. This release shall apply to, but is not limited to, claims for breach of contract, bad faith breach of contract, breach of the covenant of good faith and fair dealing, payment of insurance benefits, declaratory judgment claims, recoverable depreciation, unjust enrichment, or violations of C.R.S. §§ 10-3-1115 or -1116, or of any other statutory provisions. Under this Paragraph, no Party releases any claims against the Purported Contractees, Philip Coutu, or Frank H. Walley IV. Nothing in this Agreement shall constitute a waiver of claims against the Purported Contractees, Philip Coutu, or Frank H. Walley IV.

2.    Effective Date: This Agreement shall become effective as of the date on which all signatories have executed this Agreement.

3.    Settlement Funds: In consideration of the promises set forth in this Agreement, Insurers will issue payments of $397.119.40 (the "Settlement Funds"). These Settlement Funds are inclusive of the previously-issued but not negotiated checks referenced in Paragraphs F and H of the Recitals and all applicable deductibles. The previously-issued but not negotiated checks referenced in Paragraphs F and H of the Recitals are now void.

4.    Interpleading Payment of the Settlement Funds: Within 30 days of the Effective Date, Insurers will cause to be filed in the Court a motion to intervene or similar motion in the Litigation. The motion will argue in relevant part that (i) Mayhurst and Insurers have reached a settlement of the Claim; (ii) pursuant to this settlement, Insurers owe the Settlement Funds; (iii) Mayhurst and the Purported Contractees both assert rights to receive benefits owed by Insurers under the Policies; and (iv) Insurers wish to intervene in the Litigation for the sole purpose of interpleading the Settlement Funds pursuant to Colorado Rule of Civil Procedure 22 so that the Settlement Funds may be distributed to Mayhurst and/or the Purported Contractees upon resolution of the Litigation, and that after such interpleading is accomplished, Insurers wish to be dismissed from the Litigation. Mayhurst agrees to not oppose Insurer's effort to place the Settlement Funds on deposit with the Court pursuant to Colorado Rule of Civil Procedure 22 or the Insurers' subsequent request to be dismissed from the Litigation. If the Court denies Insurers' motion or otherwise does not permit Insurers to interplead the Settlement Funds, Insurers have the right to institute a separate court proceeding to interplead the Settlement Funds, or to put the Settlement Funds in escrow, or to take any other action Insurers see fit with the Settlement Funds until their distribution to Mayhurst and/or the Purported Contractees upon resolution of the Litigation.

3

5.    No Admission of Liability: The Parties acknowledge and agree that this settlement constitutes the compromise of disputed claims. The Parties expressly deny any liability or fault in connection with the subject matter of the Claim or this settlement. The Parties enter into this Agreement to avoid the cost and uncertainty inherent in litigation.

6.    Representations and Warranties: The Parties each separately represent and warrant that:

a.    None of the claims released pursuant to this Agreement have been assigned or transferred to any other person or entity. Mayhurst has not assigned any rights or benefits under the Claims, or related to the Claims, to a third party, a non-party, or a non-signatory to this Agreement. This representation and warranty does not apply to Mayhurst's Purported Contract or any claim or subject matter in the Litigation.

b.    Each Party has carefully read and knows and understands the full contents of this Agreement and is voluntarily entering into this Agreement after having had the opportunity to receive independent legal advice from the Party's attorney(s).

c.    No Party is relying on or has relied on any statement, representation, omission, inducement, or promise of any other Party (or any officer, agent, employee, representative, or attorney for any other Party) in executing this Agreement, or in making the settlement provided herein, except as expressly stated in this Agreement.

d.    Each Party has investigated the facts pertaining to this settlement and this Agreement, and all matters pertaining thereto, to the full extent that each Party deems necessary, and each Party hereby assumes the risk that there may exist facts that the Party does not know to exist and that, if known, would materially affect the decision to execute this Agreement.

e.    Each Party represents that it is competent and authorized to enter into this Agreement, and that each Party will do all such acts as necessary to implement and effectuate this Agreement.

Mayhurst separately warrants that:

f.    Mayhurst warrants that, to the best of its knowledge, there is no other person or party, including any loss payee, mortgage holder, lienholder, lender, named insured, additional insured, general contractor, subcontractor, independent contractor, appraiser, umpire, management company, public adjuster, or contractual beneficiary of any type, with any claim or right to any benefits under the Policies. This representation and warranty does not apply to any claim arising from or related to Mayhurst's Purported Contract or any subject matter of the Litigation.

4

Mayhurst0336

g.    To the best of Mayhurst's knowledge, there is no non-party or non-signatory to this Agreement who should or may share in, or has any basis in contract, tort, or under any statute, for any claims against: Insurers or the Released Parties in relation to the Property, the Claim, the Policies, the Storm, or the Appraisal. Further, Mayhurst expressly warrants that it is not aware of any non-party or non-signatory to this Agreement that has any basis for, or any standing to assert, any claims against the Released Parties relating to the Claim, the Policy, the Storm, the Appraisal, or this Agreement. This representation and warranty does not apply to any claim arising from or related to Mayhurst's Purported Contract or any subject matter of the Litigation.

7.    Attorney Fees and Costs: Each Party agrees to bear its own costs, attorney fees, and other expenses.

8.    Interpretation and Construction: Each of the Parties has had an adequate opportunity to read and review and to consider, with its own retained counsel, the effect of the language of this Agreement and is knowledgeable of and has agreed to its terms. Each Party hereto has cooperated in the drafting and preparation of all provisions of this Agreement, and, therefore, any construction of the intent of the Parties or language of this Agreement made by a court of law shall not be construed against any Party.

9.    Jurisdiction, Governing Law, and Forum: This Agreement shall be construed in accordance with and governed by the laws of the State of Colorado, without regard to any laws relating to choice of law or conflict of laws between or among jurisdictions. Any dispute regarding the settlement provided in this Agreement shall be brought in the El Paso County District Court for the State of Colorado, which shall have exclusive jurisdiction for such purposes.

10.    Entire Agreement: The Parties agree that this Agreement contains the entire agreement between them with respect to the settlement of the matters addressed herein, and that there are no agreements, undertakings, restrictions, warranties, or representations between them other than those set forth or provided for in this Agreement. No oral understandings, statements, promises, or inducements contrary to the terms of this Agreement exist. This Agreement cannot be changed or terminated orally. Any changes to the Agreement or any termination of this Agreement must be in writing and signed by all Parties.

11.    Complete Compromise: The Parties execute and agree to this Agreement acknowledging its receipt and sufficiency as a complete compromise of matters involving disputed issues of fact and law, and fully assume the risk of any mistake of fact or law.

12.    Enforcement of Agreement and Severability: Nothing herein shall constitute a release or waiver of any claim by the Parties to enforce the terms of this Agreement or for breach of this Agreement. Should any provision of this Agreement or the application thereof to any person, entity, or circumstance be held invalid or unenforceable for any reason or to any extent, it will be deemed severed from the Agreement, the remainder of which will continue to be in force in its entirety.

Mayhurst0337

**Falls Lake Fire & Casualty Insurance Company**

APPROVED AND ACKNOWLEDGED:

By:

Its:                                              Date:


**Landmark American Insurance Company**

APPROVED AND ACKNOWLEDGED:

By:

Its:                                              Date:


**Aspen Insurance Company**

APPROVED AND ACKNOWLEDGED:


By: Ed Coleman

Its: Property Adjuster          Date:  7/17/23


**Steadfast Insurance Company**

APPROVED AND ACKNOWLEDGED:


By:

Its:                                              Date:


7

Mayhurst0338

**Falls Lake Fire & Casualty Insurance
Company**

By:

Its:   Vice President, Claims Adjusting Group
on behalf of Falls Lake Fire & Casualty
Insurance Company

**APPROVED AND ACKNOWLEDGED:**

Date: July 11, 2023

**Landmark American Insurance Company**

By:

Its:

**APPROVED AND ACKNOWLEDGED:**

Date:

**Aspen Insurance Company**

By:

Its:

**APPROVED AND ACKNOWLEDGED:**

Date:

**Steadfast Insurance Company**

By:

Its:

**APPROVED AND ACKNOWLEDGED:**

Date:

7

Mayhurst0339

**Falls Lake Fire & Casualty Insurance Company**

By:

Its:

APPROVED AND ACKNOWLEDGED:

Date:


**Landmark American Insurance Company**

By: *Jams Hur*

Its: *AVP Property Claims*

APPROVED AND ACKNOWLEDGED:

Date: 7/5/23


**Aspen Insurance Company**

By:

Its:

APPROVED AND ACKNOWLEDGED:

Date:


**Steadfast Insurance Company**

By:

Its:

APPROVED AND ACKNOWLEDGED:

Date:

7

Mayhurst0340

**Falls Lake Fire & Casualty Insurance
Company**                                APPROVED AND ACKNOWLEDGED:

By:

Its:                                     Date:


**Landmark American Insurance Company**   APPROVED AND ACKNOWLEDGED:

By:

Its:                                     Date:


**Aspen Insurance Company**               APPROVED AND ACKNOWLEDGED:



By:

Its:                                     Date:



**Steadfast Insurance Company**           APPROVED AND ACKNOWLEDGED:



By:      _Pete Hogan_

Its:     AVP of Property Commerical Claims    Date:    6/30/2023


7

Mayhurst0341

**Ironshore Specialty Insurance Company**     **APPROVED AND ACKNOWLEDGED:**

By: *Sam Book*

Its: Sr. General Adjuster          Date: 6/26/2023

**The Mayhurst Condominium Association, Inc. APPROVED AND ACKNOWLEDGED:**

By: Kent Fortune

Its: President Mayhurst          Date: 6/25/23
Association Board

8

Mayhurst0342